USDC SCAN INDEX SHEET

















BAR   1/21/05   10:57

3:04-CR-02254   USA V. LIVINGSTON

*27*

*CRRESPM.*

ORIGINAL

CAROL C. LAM
United States Attorney
STEPHEN R. COOK
Assistant U.S. Attorney
California State Bar No. 204446
Federal Office Building
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 557-6747

Attorneys for Plaintiff
United States of America

05 JAN 19 AM 9: 57

DEPUTY

NUNC PRO TUNC

JAN 14 2005

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 04CR2254-WQH |
|---|---|---|
| Plaintiff, | ) ) ) | Date: January 28, 2005<br>Time: 1:30 p.m. |
| v. | ) ) | GOVERNMENT'S SUPPLEMENTAL |
| LEON BURTON LIVINGSTON, | ) ) | RESPONSE AND OPPOSITION TO<br>DEFENDANT'S MOTION FOR<br>SUPPRESSION OF EVIDENCE |
| Defendant. | ) ) ) ) ) | |

COMES NOW the plaintiff, United States of America, by and through its counsel, Carol C. Lam, United States Attorney, and Stephen R. Cook, Assistant United States Attorney, and hereby files its Supplemental Response and Opposition to Defendant's above-referenced motion. This Response and Opposition is based upon the files and records of the case, including the evidence and testimony taken at the motion hearings held on November 5, 2004,[1] and December 2, 2004.[2]

///
///
///
///

---

[1] The reporter's transcript of this hearing is identified herein as "RTI".

[2] The reporter's transcript of this hearing is identified herein as "RTII".

04CR2254-WQH

# I

## THE POSTAL WARRANT

### A.   STATEMENT OF FACTS

The Government incorporates by reference the statement of facts provided in its October 29, 2004, Response and Opposition to Defendant's Motion for Suppression of Evidence.

### B.   DEFENDANT HAS NO STANDING TO ALLEGE A RULE 41 VIOLATION

Rule 41 of the Federal Rules of Criminal Procedure requires government agents executing a search warrant to "give a copy of the warrant and a receipt for the property taken to the person from whom, **or from whose premises,** the property was taken; or leave a copy of the warrant and receipt **at the place where the officer took the property.**" Fed. R. Crim. P. 41(f)(3) (emphasis added). It is undisputed that Postal Inspector Santana, when executing the search warrant for a package addressed to Defendant, complied with the actual wording of Rule 41:

> Q. When you received that search warrant, when the judge had signed it, did you serve it upon the party who possessed the parcel to be searched?
>
> A. Yes.
>
> Q. Who, at the time you obtained the search warrant, possessed that parcel?
>
> A. The Postal Service.
>
> Q. And who did you serve the warrant upon once you received it?
>
> A. I served the warrant on the supervisor in my office who acts as an agent for the postal service.

[RTI 76-77.] Because the Postal Service was "the person . . . from whose premises the property was taken," service of the warrant upon the Postal Service was both necessary and sufficient to comply with Rule 41.[3]

/ / /

---

[3] The fact that Inspector Esteban served a copy of the warrant upon the same government agency with which he is employed is merely a function of the decision by Defendant and the package's sender to use a government agency – the U.S. Postal Service – to deliver the package. Had they used UPS, for example, the result would have been the same – except that Inspector Santana would have served the appropriate UPS employee with the warrant instead of the Postal Service. Defendant has not suggested that Inspector Esteban would not have obtained and executed the warrant had he been required to serve the warrant on a private mail carrier.

1    The spirit and intent of Rule 41 is also satisfied by this procedure.  The purposes for Rule 41(f)'s

2 contemporaneous service requirement are to "provide the property owner assurance and notice **during**

3 **the search**" and "to give notice to the person subject to the search what the officers are entitled to seize."

4 United States v. Gantt, 194 F.3d 987 (9th Cir. 1999) (emphasis added).  With those objectives in mind,

5 it is clear that notice to a party -- even the addressee of a package – is not required under Rule 41 if that

6 party is not physically present for the search.

7    The Ninth Circuit espoused this principle in the analogous scenario where officers are alleged

8 to have failed to abide by the "knock-and-announce" requirement.  In Mena v. City of Simi Valley, 226

9 F.3d 1031 (9th Cir. 2000), the court addressed the standing of a homeowner who is absent during

10 execution of the search to challenge the officers' conduct on these grounds:

11       Jose Mena was not present during the warrant service and execution and,
         therefore, lacks standing to challenge the officers' compliance with the
12       knock and announce requirement.

13 Id. at 1035 n.2 (citing United States v. Valencia-Roldan, 893 F.2d 1080, 1081 n.1 (9th Cir. 1990)

14 (occupant has no standing to challenge officers' knock-and-announce compliance when he was absent

15 during search)).

16    Citing Mena, the Ninth Circuit concluded that this principle of standing applies to allegations

17 by absent homeowners claiming officers violated Rule 41(f) (formerly Rule 41(d)) in the execution of

18 a search warrant:

19       This court held recently that a defendant who was not present during a
         warrant's service and execution lacked standing to challenge an officer's
20       compliance with knock-and-announce requirements. [Citing Mena].  The
         same reasoning applies here. The interests protected by the "knock-and-
21       announce" rule and those protected by Rule 41(d) are similar.  [Citing
         Gantt]
22
         Just as a person who is somewhere else cannot benefit from the
23       "assurance" provided by the showing of a warrant, an absent person has
         no present stake in the contemporaneous opportunity to monitor the
24       search for compliance with the warrant. **Thus the interest in the**
         **"notice" that showing a warrant provides, likewise, does not run to**
25       **someone who is not there and who cannot exercise that option.**

26 United States v. Silva, 247 F.3d 1051, 1059 (9th Cir. 2001) (internal citations and footnote omitted)

27 (emphasis added).

28 ///

                                              3                                04CR2254-WQH

1    Certainly, if an absentee homeowner has no standing to challenge the execution of a search of

2 his residence on Rule 41(f) grounds, Defendant does not have standing to challenge the execution of a

3 search of a mail parcel he has not yet received on the same grounds.[4] And his theory that possession of

4 the parcel should be imputed to him on a theory of "constructive possession," RTII 62-63, is simply

5 ridiculous. The same could be said for the homeowner in Silva or in Mena or in Valencia-Roldan: each

6 could be said to be in "constructive possession" of their residence at the time the warrant was executed.

7 Defendant's theory again ignores the purpose of Rule 41(e) – to provide "notice and assurance" to a

8 property owner during the search and thereby "head off breaches of the peace by dispelling any suspicion

9 that the search is illegitimate." Gantt, 194 F.3d at 1002 (quoting United States v. Stefonek, 179 F.3d

10 1030, 1035 (7th Cir. 1999)). Grafting a constructive possession theory onto Rule 41 simply makes no

11 sense in light of the Rule's intent.

12    Further, as a practical matter, broadening the scope of Rule 41(e) in the manner suggested by

13 Defendant would make proper execution of parcel warrants exceedingly difficult, if not impossible, in

14 many cases. It is common knowledge that narcotics traffickers frequently use false names, commercial

15 mailing facilities, couriers, etc. to conceal their identity and/or place of residence. Assuming, for

16 example, that agents were able to determine who has "constructive possession" of an undelivered

17 package, requiring the agents to identify and locate these persons would entail an enormous allocation

18 of resources and would be, in many cases, impossible. Surely Congress is capable of drafting such a

19 requirement into the language of Rule 41 if it were deemed appropriate, and adopting an interpretation

20 that injects such ambiguity where the plain language is otherwise clear violates the canons of statutory

21 construction. See, e.g., Jama v. Immigration and Customs Enforcement, 2005 U.S. LEXIS 626, *12

22 (U.S.S.C. Jan. 12, 2005) ("We do not lightly assume that Congress has omitted from its adopted text

23 requirements that it nonetheless intends to apply . . . .").

24 / / /

25

26    [4] The Court suggested at the December 5, 2004 hearing that Defendant may have standing.
[RTII 62.] While Defendant may have standing to challenge the search warrant itself (he has not) or to
27 pursue civil actions collateral to the search, the Government respectfully suggests that he lacks standing
to challenge the *execution* of the warrant for the reasons stated in Silva. With regard to Defendant's
28 professed concerns about searches that do not yield contraband and about which the addressee never
learns, that issue simply is not before the Court. Defendant was informed of the search and received
notification of the items seized. [RTII 34-35.]

4                                      04CR2254-WQH

1    **C.     THE PARCEL SEARCH DID NOT VIOLATE THE FOURTH AMENDMENT**

2    Defendant claims that his Fourth Amendment rights were violated when he did not receive a

3    copy of the parcel search warrant.  In support, Defendant cites United States v. Freitas, 800 F.2d 1451

4    (9th Cir. 1986) [hereinafter Freitas I], a "sneak and peak" case.  In Freitas I, the Court found a sneak and

5    peak warrant for a residence violated the Fourth Amendment because it lacked a notice provision.  Id.

6    at 1456.  To be clear, in this case notice was given to not only the person from whose premises the

7    property was taken (Postal Service), but to Defendant himself just two days after execution:

8    MR. COOK:  I just want to be clear.  You told him [Defendant] at that
     time [at the post office] that you had obtained a search warrant for the

9    package?

10   INSPECTOR SANTANA:  Yes.

11   MR. COOK:  Did you tell him the package had been searched?

12   INSPECTOR SANTANA:  Yes.

13   *     *     *

     MR. COOK:     When you told the Defendant that you had searched this parcel pursuant

14   to a warrant, did he ask to see a copy of that warrant?

15   INSPECTOR SANTANA:  No.

16   [RTII 34, 57.][5]

17   In any case, Freitas I is inapposite here and is limited by its own terms to the unique

18   circumstances accompanying a "sneak and peak" search of a residence:

19   **We take this position because surreptitious searches and seizures of
     intangibles** strike at the very heart of the interests protected by the Fourth

20   Amendment.  The mere thought of strangers walking through and
     visually examining **the center of our privacy interest, our home,**

21   arouses our passion for freedom as does nothing else.  That passion, the
     true source of the Fourth Amendment, demands that surreptitious entries

22   be closely circumscribed.  The warrants in this case failed to do so.

23   Id. (emphasis added).

24   The warrant at issue here was not a surreptitious search of Defendant's residence.  Nor was it a

25   search for intangibles – or as the dissent framed the issue, "free-roaming, unsupervised license to cast

26

27           [5]  Prior to informing Defendant of the search warrant for the package, Inspector Santana

28   questioned Defendant concerning his knowledge of its contents.  [RTII 32-34.]  The Government does
     not intend to use these statements (those made to Inspector Esteban prior to being informed of the
     existence of a search warrant) in its case-in-chief.

1   entirely aside all vestige of the right to privacy . . . ." Id. at 1458 (Poole, J., dissenting).  The search here

2   was of the traditional sort – for tangible items and executed with proper notice to the party in possession

3   of the package.  There was no Fourth Amendment violation.

4       **D.    ASSUMING A RULE 41 VIOLATION, SUPPRESSION WOULD NOT BE WARRANTED**

5       Assuming, *arguendo*, that the Court were to find that Defendant was entitled to notice of the

6   search pursuant to Rule 41, and that the notice he received was somehow inadequate, suppression is not

7   the appropriate remedy.

8       Nearly two years after the Ninth Circuit decided Freitas I, the case was back before the court.

9   After remand, the district court found that the Rule 41 violation described in Freitas I was "fundamental"

10  and therefore required automatic suppression.  See United States v. Freitas, 856 F.2d 1425, 1432 (9th

11  Cir. 1988) [hereinafter Freitas II].  Further, the district court found that even if the violation was

12  "technical," the agents had acted "intentionally and deliberately disregarded the explicit notice

13  provisions of Rule 41(d)." Id. Agreeing with the Government, the court held that "[u]nlike the objective

14  reasonableness test of Leon and Sheppard, Rule 41's rule of intentional and deliberate misconduct

15  requires subjective bad faith on the part of the government agents." Id.  The Ninth Circuit found that

16  the district court "disregarded the testimony that the agents still would have conducted the search if a

17  provision for notifying Freitas within seven days had been inserted into the warrant." Id.

18      Here, Inspector Santana notified Defendant of the search within two days of its execution.

19  Further, Inspector Santana testified that had Defendant asked for a copy of the warrant, he would have

20  provided it, RTII 57, and that the Postal Inspection Service does not have a policy that would have

21  prohibited him from doing so.  [RTII 58.]  This is significant, establishing that Inspector Santana would

22  have executed the search warrant in the same manner, even had the warrant contained a provision

23  requiring notice to Defendant.  There was no "subjective bad faith" here and suppression is not

24  warranted.

25      Nor is the alleged defect "fundamental".  A violation is fundamental "only where it, in effect,

26  renders the search unconstitutional under traditional fourth amendment standards." Id. (quoting United

27  States v. Johnson, 660 F.2d 749, 753 (9th Cir. 1981)).  There must be "a clear constitutional violation."

28  Id. (quoting United States v. Stefanson, 648 F.2d 1231, 1235 (9th Cir. 1981)).  In concluding that the

defect with the Freitas warrant was not fundamental (and therefore did not require automatic suppression), the Ninth Circuit cited the following facts: (1) the defect could have been cured by simply including a requirement that notice be provided within 7 days; (2) the "constitutional infirmity" did not arise from the nature of the search itself (there, surreptitious entry) and; (3) the search would have gone forward even had the warrant contained a notice provision. Freitas II, 856 F.2d at 1433.  Importantly, the court found that the constitutional infirmity was:

> based on a distinction between post-search notice and no notice.  this distinction is too tenuous a hook upon which to hand a finding of fundamentality, especially considering the agents' testimony that they would have gone ahead with the search had they been told that post-search notice was required.

Id.

And so it is here:  (1) the defect alleged by Defendant could have been cured with the inclusion of a notice requirement to the *addressee*; (2) the alleged "constitutional infirmity" does not arise from the nature of the search itself; and (3) inclusion of such a notice requirement would not have halted the search.  Accordingly, the alleged defect was not "fundamental" and suppression would not be warranted.

## II

## THE SEARCH OF DEFENDANT'S RESIDENCE

### A.    STATEMENT OF FACTS

The Government incorporates by reference the statement of facts provided in its October 29, 2004, Response and Opposition to Defendant's Motion for Suppression of Evidence.  In addition, the Government provides the following summary of the testimony provided by the Government agents and officers responsible for the execution of the search warrant at Defendant's residence.

Agents first met with Defendant on the day of the search at a post office in Jamul, near Defendant's home.  After ensuring Defendant was unarmed, DEA Special Agent Eschimi asked Defendant for consent to search his property.  [RTI 16-17.]  Defendant declined.  [RTI 17.]  Agent Eschimi then informed Defendant that he had a search warrant for his property.  [Id.]  Agent Eschimi showed the warrant to Defendant, holding it up in his hand close enough for Defendant to see for about 15-20 seconds.  [RTI 17, 32, 48.]  Defendant did not ask for a copy of the warrant:

/ / /

> MR. COOK:  Okay.  And when you showed it to him, was he in a position to look at the documents that you were showing him?
>
> AGENT ESCHIMI:  Yes, he was.
>
> MR. COOK:  You kept it in your hands?
>
> AGENT ESCHIMI:  I did.
>
> MR. COOK:  Did he at anytime ask for a copy of the warrant?
>
> AGENT ESCHIMI:  Not at that time.
>
> MR. COOK:  If he had asked, would you have given it to him?
>
> AGENT ESCHIMI:  Yes.

[RTI 19.][6]

On cross-examination, Agent Eschimi again testified that Defendant did not ask to see a copy of the warrant, nor was he aware of any requests made by Defendant of other law enforcement officers to see the warrant. [RTI 33, 41-42.] Agent Eschimi did, however, place a copy of the search warrant on the kitchen counter, located about 10-12 feet from the Defendant, at approximately 2:15 p.m. [RTI 25, 42.] Agent Eschimi told Defendant that he was placing the warrant on the counter and that he would be back at the conclusion of the search to leave the receipt and inventory and answer any of Defendant's questions. [RTI 25.] San Diego Police Officer Tejeda testified she heard Agent Eschimi announce that he was leaving the warrant on the counter and that he would "go over it before he left". [RTI 93.]

Agent Eschimi testified that, approximately 45 minutes later (3:00 p.m.), he returned to the house and saw the Defendant with the search warrant in his hands, reading it. [RTI 26, 50-51.] Both Agent Wells and San Diego Police Sergeant Earl Lyons also recalled seeing the Defendant reading the search warrant while he was seated in his living room. [RTI 68-69 (Wells); RTII 7-8 (Lyons).][7] The search was completed at approximately 4:30 p.m. [RTI 27.]

/ / /

---

[6] Both DEA Special Agent Wells and Postal Inspector Santana could not recall Defendant asking to see a copy of the warrant. [RTI 69-70 (Wells); RTII 43 (Eschimi).]

[7] Sgt. Lyons could not be absolutely certain that the documents he saw Defendant reading was, in fact, the search warrant. He testified that the papers "appeared to be" the warrant, [RTII 7, 13], and recalled seeing it on the kitchen counter, then noticing that it was no longer there and that the Defendant appeared to have "what was a similar type of paper in his hand." [RTII 29-30.]

1  **B.    THE ALLEGED VIOLATION OF THE <u>GANTT</u> REQUIREMENT WAS TECHNICAL ONLY AND DOES NOT WARRANT SUPPRESSION**

2  Rule 41(f) states, in pertinent part:

3  
> The officer executing the warrant must:

4  

5  
> (A) give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken; or

6  

7  
> (B) leave a copy of the warrant and receipt at the place where the officer took the property.

8  Fed. R. Crim. P. 41(f)

9  The language of Rule 41(f) does not require service of a search warrant upon commencement

10  of the search. That requirement was announced by the Ninth Circuit in <u>United States v. Gantt</u>, 194 F.3d

11  987 (9th Cir. 1999). But the Supreme Court's February, 2004 decision in <u>Groh v. Ramirez</u>, 540 U.S.

12  551 (2004), in the words of the Ninth Circuit, **"casts serious doubt both on our interpretation of Rule**

13  **41 and our reasoning in <u>Gantt</u> . . . ."** <u>United States v. Mann</u>, 389 F.3d 869, 875 (9th Cir. 2004). In

14  <u>Groh</u>, the Supreme Court stated that:

15  
> Neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on

16  
> the owner before commencing the search.

17  <u>Id.</u> at 562 n.5.

18  The <u>Groh</u> decision was handed down in February, 2004, and was in full force when agents

19  executed the warrant on Defendant's residence in August, 2004. And while the Ninth Circuit found the

20  above-cited language from <u>Groh</u> to be dicta and ultimately concluded that it did not "definitively

21  abrogate" its decision in <u>Gantt</u>, the court did not issue the <u>Mann</u> opinion until November, 2004 – more

22  than two months after the search of Defendant's residence. <u>Mann</u>, 389 F.3d at 875.

23  Setting aside the unresolved issue of <u>Gantt's</u> continued validity, this uncertainty bears directly

24  on the issue of whether suppression is an appropriate remedy for a violation of the <u>Gantt</u> rule. Even

25  <u>Gantt</u> acknowledged that "[v]iolations of Rule 41(d) do not usually demand suppression . . . ." <u>Id.</u> at

26  1005. Suppression is only "automatic" if the violation is deemed to be a "clear constitutional violation."

27  

28

1   Freitas II, 856 F.2d at 1433.[8]  The law as it existed when the officers executed the warrant on

2   Defendant's home (after Groh) can fairly be interpreted as *not requiring* service of the warrant prior to

3   executing the search.  See, e.g., United States v. Katoa, 379 F.3d 1203, 1205 (10th Cir. 2004) (citing

4   Groh and holding that "there is no constitutional requirement that an officer present a warrant prior to

5   a search."); People v. Ellison, 773 N.Y.S.2d 860, 867-68 & n.5 (Sup. Ct. N.Y. 2004) (stating that the

6   Supreme Court's holdings in Groh and United States v. Banks, 540 U.S. 31 (2003), "would seem to fully

7   abrogate" Gantt).  In light of the Supreme Court's opinion in Groh, it is clear that failure to serve

8   Defendant with a complete copy of the warrant at the outset of the search cannot be deemed a "clear

9   constitutional violation."  Indeed, even in the wake of the Ninth Circuit's November, 2004 decision in

10  Mann, the validity of the Gantt decision is hardly clear..

11      While the agents' actions did not constitute a "fundamental" or "clear constitutional" violation

12  requiring automatic suppression as noted above, technical violations may still, in some cases, warrant

13  such a drastic remedy.  Suppression based on a technical violation may be appropriate only where there

14  is "subjective bad faith on the part of the government agents" or if the Defendant was prejudiced.  Freitas

15  II, 856 F.2d at 1432; see also Gantt, 194 F.3d at 1005.  Prejudice, in this context, has been held to mean

16  that "the search might not have occurred or would not have been so abrasive if the Rule had been

17  followed." United States v. Vasser, 648 F.2d 507, 510 (9th Cir. 1980) (quoting United States v. Radlick,

18  581 F.2d 225 (9th Cir. 1978)).  Neither subjective bad faith nor prejudice is found here.

19      The Gantt case epitomizes the type of subjective bad faith warranting suppression.  Indeed, Gantt

20  is the only Ninth Circuit case in which suppression was found warranted based on a violation of this

21  particular provision of Rule 41.  There, the defendant requested a copy of the warrant and was refused.

22  Only after the defendant had been arrested, removed from the premises and taken to an FBI office was

23  she provided with a complete copy of the search warrant.  Id. at 990.  In light of the defendant's requests

24  and the agents' refusal to provide a copy of the warrant until long after the search was complete, the

25  Ninth Circuit found the violation of Rule 41(d) to be deliberate and deserving of suppression.  Id. at 994-

26  95.

27

28

---

[8] Suppression may not be appropriate even cases of "fundamental" violations if the Government can show good faith reliance as described in United States v. Leon, 468 U.S. 897 (1984).

1      The circumstances here are far different. Defendant was shown a copy of the warrant before the

2  search began. He did not ask for a copy, though Agent Eschimi testified he would have handed one over

3  if asked. Defendant was provided a copy of the warrant, and was seen reading the warrant, at least mid-

4  way through the search if not earlier. While not the ideal chain of events under <u>Gantt</u>, this is a far cry

5  from what happened in that case. On these facts, and in light of <u>Gantt's</u> questionable validity –

6  particularly at the time the warrant was executed – suppression based on this alleged technical violation

7  is not warranted.

8                                    **IV**

9                            **CONCLUSION**

10      For the foregoing reasons, the Government respectfully requests that this Court deny Defendant's

11  motion to suppress evidence seized and derived from the mail parcel search.

12

13  DATED:       January 14, 2005          Respectfully submitted,

14                                  CAROL C. LAM

                                    United States Attorney

15

16

17                                  STEPHEN R. COOK

                                    Assistant United States Attorney

18                                  Attorneys for Plaintiff

                                    United States of America

19

20

21

22

23

24

25

26

27

28

04CR2254-WQH

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 04CR2254-WQH |
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| LEON LIVINGSTON, | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED that:

I, Stephen Cook, am a citizen of the United States over the age of 18 years and a resident of San Diego County, California; my business address is 880 Front Street, Room 6293 San Diego, California 92101-8800; I am not a party to the above-entitled action, and I transmitted by facsimile a copy of the following:

**GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE**

to:

Eugene Iredale
105 West F Street, 4th Floor
San Diego, CA 92101

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 14, 2005

04CR2254-WQH